# Willis v. Lapsley et al.

(Decided October 30, 1931.)

830

R. F. MATTHEWS for appellant.

GEORGE L. WILLIS, Jr., for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—
Affirming.

In 1905, Henry Maddox, then a resident of Shelby county, Ky., died testate. His will and codicils thereto were duly probated by the county court. The third clause of his original will is in this language:

> "3rd. To my daughter, Mary Lizzie Maddox, I give my home farm, including the land bought of Rains, and fifty acres bought of my father's estate, containing all together about two hundred and fifty acres, I also give to her the farm bought of Mason containing one hundred and eleven acres all of which she is to have during her life and at her death to her children, if any, and if none, to be equally divided between my two sons, David T. and Joseph H. Maddox. The land here devised to my daughter, Mary Lizzie, including seven hundred dollars for extra schooling, I value to her at Twenty-one thousand six hundred and nineteen ($21,619.27) and twenty-seven cents."

Included in the 250 acres devised by the above clause to Mary Lizzie Maddox, was a tract of 32 acres and 2 poles.

In 1918, Lizzie Willis, nee Maddox, who had intermarried with L. C. Willis, together with her two daughters, Elizabeth Bond and Josephine W. Wakefield, and their husbands, Allen Bond and M. T. Wakefield, as plaintiffs, filed an action in the Shelby circuit court against M. Clay Willis, another daughter of Lizzie M. Willis, wherein they sought a sale of the 32 acres and 2 poles, and a reinvestment of the proceeds. A sale of it and a reinvestment of the proceeds were had in that action. The proceeds, amounting to $4,850, were, under appropriate orders, reinvested in a house and lot in

Shelbyville, Ky. The deed to this property contains this clause:

"To have and to hold to the second parties thus: To Lizzie M. Willis for and during her life and at her death to her children, if any, and if none, to be equally divided between the two sons of Henry M. Maddox, to-wit: Joseph Maddox and David Maddox or their descendants."

By comparison it will be noted that this habendum clause of the deed is substantially in the language in part of clause 3, supra, of the will. By order of the court the original action was filed away. On the 10th day of September, 1930, an amended petition was filed by plaintiffs in the original action, against the defendant in the original action, and her husband, she having married Shively Lapsley, after the filing of the former and before the filing of the latter. The defendants in the amended petition, Clay Willis Lapsley and Shively Lapsley, entered their appearance by filing an answer. The case was prepared for trial, and on submission a judgment was entered directing a sale of the house and lot, and a reinvestment of the proceeds. A sale was made by the master commissioner at which Lizzie M. Willis became the purchaser, and executed bond for the purchase price with surety. She filed exceptions to the report of sale, challenging the title on the ground that David T. and Joseph H. Maddox were not parties to the action, and therefore the sale as against them passed no title. The court overruled her exceptions, confirmed the sale, and directed deed to be made. From this order she appeals.

The quoted clause from the deed and clause 3 of the will being, in substance, identical, a construction of one is a construction of the other. The estate devised, in our opinion, vested in Mary L. Maddox for life, and the remainder to vest upon her death in such of her children as may be living at the time of her death, and to their living descendants next in order of those of her children as then may be dead. This remainder is contingent upon the remaindermen indicated being alive at her death. If, however, she has no descendants or children living at the time of her death, then the two sons of the testator, Joseph H. and David T. Maddox, if then living, will be the remaindermen, or, if they be dead at that time, their living descendants next in order, if any, are to take the estate. McKee v. McKee's Ex'r, 82 S. W. 451, 26 Ky.

Law Rep. 736; Golladay v. Knock, 235 Ill. 412, 85 N. E. 649, 126 Am. St. Rep. 224; 21 C. J. sec. 140, p. 988.

The proceedings to sell the house and lot were had under section 491 of the Civil Code of Practice. The language of this section is:

"In an equitable action by the owner of a particular estate of freehold in possession . . . against the owner of the reversion or remainder . . .; or, if the remainder be contingent, against the person, if in being, in whom it would have vested if the contingency had happened before commencement of the action, . . . real property may be sold for investment of the proceeds in other real property."

This provision has been often considered and construed by this court. McClure v. Crume, 141 Ky. 361, 132 S. W. 433; Crume v. Sherman, 185 Ky. 376, 215 S. W. 196; Latta v. Louisville Trust Co., 198 Ky. 45, 247 S. W. 1103; Lowe v. Taylor et al., 222 Ky. 846, 25 S. W. (2d) 1042; Goff v. Renick, 156 Ky. 588, 161 S. W. 983, 984; Walden v. Smith, 179 Ky. 829, 201 S. W. 302, 303.

In Goff v. Renick, supra, the testator devised his land to Abram Renick, Jr., Morris Renick, Bring Renick, and Scott Renick during their natural lives, and after their death, or the death of either of them, to the heirs of their or his body. "If either or any of said devisees should die without issue then leave . . . to the survivor and to the descendants then living of those that may then be dead to be divided equally among those surviving and the representatives of those who may be dead, the descendants of either of said brothers to represent their ancestor. . . . The action was instituted by J. Scott Renick, Princess Renick, his wife, Harry Phelps Renick, his son, Abram Renick, B. M. Renick, and Morris W. Renick, his brothers, all being plaintiffs." The children of Scott, Abram, Brink, and Morris Renick were not made parties to the action. The appellant insisted that their children were necessary parties, and that the sale of the land by the commissioner was invalid, and should be set aside because they were not before the court. Our conclusion in the case was stated in this language:

"We regard this contention unsound, for under the section supra, as these remainders were contingent and go in successive order, it was only neces-

sary to bring before the court, in order to obtain a valid sale of the property for reinvestment of the proceeds, 'the person, if in being, in whom it (the tile) would have vested if the contingency had happened before commencement of the action.''

In Walden v. Smith, supra, the testator bequeathed of his estate, one-third, to his wife (Mary L. Smith) for life, and the remainder at her death to his daughter (Letitia Smith), and to his daughter the other two-thirds for life, with remainder at her death to her '' 'heirs', but, if she died without 'heirs', that the property should in that event go to the brothers and sisters of the testator and their heirs, or the surviving brothers and sisters of such of the sisters as might have no heirs at their death.'' An action was instituted by Mary L. Smith and Letitia Smith Bell and the brothers and sisters of the testator and the heirs of such of them as had died. They were properly summoned, and a guardian ad litem appointed for such of them as were infants.

The contingent remaindermen in being at the time of the institution of the actions in Goff v. Renick, supra, and in Walden v. Smith, supra, were made either plaintiffs or defendants, and were properly before the court, except the children of the owner of a contingent remainder, in the Goff-Renick case. The facts of the present case distinguished it from those in the Goff-Renick case and the Walden-Smith case, in that Joseph H. and David T. Maddox were, so far as appears from the record, living at the institution of the action, and they were not made parties, either plaintiffs or defendants. Nothwithstanding the fact that all living persons were parties to the action in the Goff-Renick and the Walden-Smith cases, and were before the court, section 491 of the Civil Code of Practice was considered and construed in those cases.

The question here was presented directly and decided in Crume et al. v. Sherman, supra. One of the contingent remaindermen in being, in whom the title would have vested if the contingency had happened before the commencement of the action, was not a party, either plaintiff or defendant, and before the court. The construction of section 491, supra, by this court in Goff-Renick and Walden-Smith cases was followed.

In our consideration of section 491, supra, in Crume et al. v. Sherman et al., again we held that in an action

authorized by section 491, Civil Code of Practice, to obtain a valid sale of the property held by the life tenant for reinvestment, the only necessary parties were the persons in being, in whom the title would have vested if the contingency had happened before the commencement of the action.

In Gossom v. McFarran, 79 Ky. 236, this court held that section 491, supra, was unconstitutional in so far as it authorized a sale of the property of an adult against his consent, not under the disability of unsound mind, but was followed in so far as it authorized a sale of the interest of the remindermen under the disability of infancy, or unsound mind. The question here was in that case determined. Section 491, supra, deals with a situation beyond the power of the parties in interest, and confers a power upon a court of equity to provide a method of sale and investment, and authorizes same when it satisfactorily appears to the court that such sale is to the best interest of both the owner of the particular estate and the contingent remaindermen. The "necessities of justice" require that such a remedy be provided. The person in being who has a contingent remainder in the property, and in whom the title would vest if the contingency had happened before the commencement of the action, is required to be joined as a plaintiff or as a defendant in the proceeding in an action by the owner of the particular estate, in order that his own interest may be protected by his watchfulness, and his exercise of this protective interest is identical in its character with the more remote, or unknown, remainderman, which thereby may also be protected. A sale and a distribution of the proceeds of the property are not authorized or permissible under section 491, supra. The intent and purpose of the section are to provide solely for a sale and reinvestment of the proceeds of the property, which necessarily must remain subject to the orders, and under the supervision of the court until the proceeds are reinvested. The language of the Code expressly limits the power of the court to the sale and reinvestment of the proceeds in other real property. The court should not only protect but represent the remainderman, and look after his property rights, although he may never come into existence. Without the authority conferred upon the court by section 491, not only those who are in being in whom the title would vest, if the contingency happened before the commencement of the action, would suffer because of the pos-

si'ble existence of the present contingent interest, but those not in existence and who may be next in order in whom the remainder would vest.

In accordance to this and our previous construction of section 491, Joseph H. and David T. Maddox were neither necessary nor proper parties to the action to vest in the purchaser, under the proceedings had, the title in fee.

Wherefore the judgment is affirmed.

Whole court sitting.